Argument not to exceed 15 minutes per side. Mr. Schanenberger, you may proceed for the appellant. Good morning, Your Honors. William Schanenberger on behalf of the appellant. I can't hear you right now. Go ahead. I'm sorry? I couldn't hear you at first. I apologize. William Schanenberger on behalf of the appellant, Dimond Rigging Company. Your Honors, there are several issues that we've raised in our appellate brief. I'm going to just try and focus on what I think are the most salient issues. This was originally a breach of contract action filed by a Chinese company against my client who filed counterclaims. The trial court entertained a partial motion for remissed all of my client's counterclaims and awarded summary judgment to Hawtai on its claim that my client had a contractual obligation to What's all summary judgment? There was a written amended transportation agreement executed between the parties, and in that amended transportation agreement, there was a simple I refer to it as a gratuitous statement, a statement by my client to the other side saying the insurance company has authorized me to begin rebuilding or looking to There was testimony at trial that the elevator was shipped to China in about 20 different shipping containers. Only one of those containers of the 20 went overboard. The other 19, the trial testimony was that The district court never got to the merits. Did it, counsel? The district court did not ever quite get to the merits because of the failure to meet its requirements. Failure to prepare your brief in accordance with the court's orders. You want to get to the merits, but I don't think we ever were able to get there. That's not what the district court decided. Well, that's correct, Your Honor. The district court did not get to the merits of my client's counterclaims because of an error that this attorney made with respect to the filing. I had filed, I think, at that time You can argue about that, how the district court abused its discretion. Well, the district court's order struck our response of pleadings to the summary disposition motion, and I looked at the electronic, local electronic filing rules, the records. They permit an attorney to make the same mistake three times in six months, and then there's notice by the ECF clerk. It's supposed to be notice. Hey, you submitted this in 12-point font. It's supposed to be in 14-point font. You can make the same mistake three times in six months, and then you're sent to the chief judge. I had filed, I think, 32 or 33 pleadings prior to the summary disposition motion. All of them were in 11- or 12-point font. I was never notified that it was impermissible, and when I filed the summary judgment brief, it was stricken in large part due to the improper font size. The local rules of the Eastern District of Michigan and the federal rules, maybe not admonish, but recommend to a trial court judge not to punish a litigant for an attorney's mistake and to be sure that the punishment fits the crime, so to speak. I think here to strike responsive pleadings that contained what I think are an absolute defense to the plaintiff's claims, I think, was an abuse of discretion. Did you give us a copy of these rules that give you three strikes? Yes. I cited them in my brief, Your Honor. That isn't a rule, is it? Courts are required to give three chances? No. I can't imagine that's the case. In the Eastern District of Michigan, there's an ECF, electronic filing clerk, and there's procedural rules that apply to attorneys. Those rules are signed by the chief judge at the Eastern District of Michigan, and if you don't follow those rules, you end up seeing the chief judge. As an attorney, I assume if the local court is going to pass electronic filing rules on what's supposed to happen, that it's going to work both ways, and we're going to try and follow them, and if not, we're going to get notified the way we're warned we're going to get notified. I think you cited the rule, but I don't see an argument consistent with that presented in your brief, that this was abuse of discretion not to give me three chances. You said you weren't warned. I know that you did say that. I don't know. You can proceed with your argument. Okay. I was trying to find it in my brief. If you are going to proceed with your argument, or do you want to make a further response to that? If you'd like me to find it in the brief. Oh, find it? I shall find it. Do you think you did tell us that you did? I believe I actually included it and cited a portion of it. All right. I'll look for that, counsel. I don't want to detain you. Okay. Thank you. Let me ask you a question about the argument that I think you raised. Are you raising now the argument, your argument B, which is on page six to eight of your brief? Because you said you were going to limit to certain arguments. I'm trying to figure out which one you are on. That's the one about the elevator. Is that the argument you're starting out with? Yes, Your Honor. Okay. Well, then I want to ask you some questions from . . . I am getting feedback, Ms. Deputy. Is there a way to turn that down? Yeah, I'm working on it. I don't want my voice to ring. Okay. Is that better? Thank you. Can you still hear me? Yes, Your Honor. Okay. Here's what your opponent says. Ordos purchased the Line 7 equipment, which included a Shuler cut-to-length press and a Versant press, and they entered into the agreement. And under that agreement, your client assumed all risk of loss to the Line 7 equipment during transportation to China. Is that true? That is true. And was obligated to procure insurance to cover the risk. Is that true? That is true. The elevator was part of the Shuler press and was lost at sea during inclement weather. That is not true. That's not true? The first half of that sentence is not true. The second half is. Oh, it's not part of the Shuler press, but it was lost at sea? Correct. That's fine. You properly procured insurance. Correct. And you received $975,000. Correct, Your Honor, but the $900,000— From the insurer on his claim for the lost elevator, right? Not correct. What's wrong with that? My client suffered damages of his own in connection with that sea accident. The elevator went overboard. The ship was detained in Denmark, I believe. My client was charged hundreds of thousands of dollars in detainee charges. They had to offload all of those containers, open them up, inspect them, reload them, re-put them on. My client, he suffered damages far in excess of $975,000. And at trial, he testified that the resolution of all of his damages, he agreed on $975,000. And I think the most significant part of that is the insurance check was made just payable to my client, not jointly, even though hot tie was listed as an additional loss payment. But you had an obligation to cover the loss of the elevator, though, right? We had an obligation to cover the loss of the equipment that was covered by the contract. It included the elevator. It did not include the elevator. At trial and even prior to trial, there was the hot tie produced their invoice and purchase order for the Line 7 equipment and the Line 15 equipment. Nowhere. You already agreed that you assumed the risk of loss to the Line 7 agreement during transportation to China. Correct. What I'm suggesting. You're saying not? No, I'm saying. Here's what I'm saying. We assumed the risk of loss to the Line 7 equipment. There was a material question of fact about whether or not the elevator, which was manufactured by Orchid ASRS, not part of the Verizon or Shuler, was part of the Line 7 or if it was an additional piece that the representative hot tie threw in. You're saying it wasn't covered by the risk of loss agreement? If it wasn't part of the Line 7 and it was some side deal that Mr. Hsu was trying to do with my client, then no, it would not be covered. You were shipping this elevator as part of your contract to ship stuff to China and the contract to ship stuff to China said you would bear the risk of loss, but you're saying it wasn't part of that contract? Sort of. What I'm saying is the representative of hot tie, who is the same individual that we said was complicit in this extortion scheme, asked my client to take this ASRS elevator that was an add-on, could be added on to any type of machine, and put it on the boat and ship it to China too. He did not know, the hot tie representative, what they were going to do with it yet. And so I had a question about whether or not that elevator that was subject of this side deal was part of the Line 7. When hot tie produced the invoice and purchase order for the Line 7 and the Line 15, that piece, ORCID ASRS system, huge, 20 shipping containers, nowhere on the invoice. Nowhere on the invoice at all. You were just shipping stuff that you didn't have invoice to ship for? No, my client testified that the representative of hot tie, who was here in the United States, said to my client, I don't know what we're going to do with this ASRS system, but why don't we for now just throw it in. We'll worry about doing a contract for it later. The other significant part of... Sort of added something on to it. You just agreed to ship something that wasn't covered by your contract to ship stuff informally. Yes. Okay. The other significant part of the loss of the elevator was the party's contract said that force majeure events there would be no liability for. There was testimony and reports that this was a very unexpected storm in the North Sea, an act of God. The survey report indicated that the captain of the ship reported to the insurer that he was afraid, because of the storm and the listing of the ship, that that elevator was going to pull the ship over. He ordered his mates to cut and jettison that elevator. It was an intentional cutting by the ship's captain and crew to try and save his ship. I understand it. But that's not something that my client... There was some argument about whether force majeure was adequately pled. The argument was that, and the trial court's ruling was, because you didn't plead force majeure or timely compliance with contractual provisions, as an affirmative defense, I'm not going to permit you to question any witness. We'll have to examine your briefs on that issue. Okay. I can address that briefly if you'd like. I think your time is up. Okay. Thank you. Thank you, Counsel. Good morning, Your Honors. Daniel Rustman appearing on behalf of the plaintiffs, Hatay Auto Body in Inner Mongolia. I think that I'll just respond to some of the issues that were raised, and then if the panel has any questions... It would be useful that the elevator is a large portion of the damages. Yes, Your Honor. More than half of the damages are just this elevator item? Well, it's an item that was specifically awarded by the jury, so in terms of the judgment amount, it's a significant portion of the judgment amount. It was just a portion of the claim. The jury didn't allow quite a bit of damages. What they did allow, it's a pretty substantial portion. Correct, Your Honor. And it was specific, and the amount that the jury found was $975,000 specific to the loss of the elevator. Because the trial judge had addressed the merits of this claim in his summary judgment order, and as Your Honor pointed out, he found specifically that the defendant had assumed all risk of loss to the Line 7 equipment, that the elevator was part of the Line 7 equipment, that he had procured insurance, and that he had been... He says that I guess the bottom line of his argument is that it wasn't part of the Line 7 equipment. Is that how you're interpreting his argument today? That's what he's arguing, Your Honor. How do you respond to that? Well, he also argued that to the jury. It was a significant portion of this testimony of the parties before the jury what was or what wasn't part of the equipment. I see. So that's covered by the jury verdict. I believe so, Your Honor. The jury determined that the elevator, that he was paid $975,000 for the insurance company for the elevator. It was never, even under his argument, it wasn't his equipment, even whether it was part of the Line 7 or not. It was lost at sea. He was paid $975,000. And the $975,000 amount, although he's argued, well, it was to compensate me for other damages, which was argued before the jury. The quote that he made to replace the elevator to the insurance company, which was a detailed construction-type quote, was in the amount of $975,000. And the insurance company paid him, and the paperwork specifically said, and the backup was to replace this elevator. So the jury didn't buy the argument that the payment from the insurance company was for something else. It was for the replacement of the elevator. The trial judge had already found that it was covered by the contract. And the amended contract very specifically addresses the replacement of the elevator and says you're rebuilding the elevator. So there was an additional contractual obligation. Well, that responds to his argument about the elevator. What about the other argument he was making this morning about the judge's sanction, the judge's order not to . . . Yes, Your Honor. What he was discussing with Judge Cook. Well, I think it's . . . the significant point that I'd like to note . . . It came as a result of the untimeliness. That's correct, Your Honor. It really wasn't that he didn't . . . the issue wasn't whether or not he complied with the local rules in the first instance. It was that he failed to comply with a court order. The court allowed him to file a tardy response to the summary judgment motion. And in that order, very specifically said, and you shall follow our local rules and my practice guidelines or I will not consider your brief. Giving him ample notice to follow it. Three strikes isn't triggered in that event. Not really, Your Honor. It wasn't a violation of these local rules where he might have . . . I don't really know how many strikes might be allowed, but it was a clear violation of the order. And the significant violation . . . Although the court mentioned that he didn't follow the typeface rules, which also changes the pagination, of course. The more significant shortcoming was that he didn't file a counterstatement of disputed material facts . . . in which he addressed each fact alleged in my motion with specific references to the record. He provided . . . Really, he came in with a counter motion on some other issues that weren't really pertinent. And, he never really . . . never in his stricken papers, even if they had been considered, didn't refute the facts that were pertinent to each of the judge's rulings. So, as we pointed out in our brief, Your Honor, it was well within the court's discretion to strike the brief. But, even if they're assuming arguendo that that had been improper, summary judgment order still was proper because there was an adequate base. It was harmless error. There was an adequate basis for it. Even if the court had considered everything that was in the brief that had been stricken. Okay, well that deals with the two issues that your opponent focused on. He raised a number of other issues that he wasn't able to get to. Are there any of those that you feel a need to respond to in particular? I'm not asking you to do so. I'm just . . . Well, the only issue that I . . . I believe our brief covered the issues adequately. The only issue that I would raise in addition, which may be at my peril since he didn't raise it. But, in his reply brief, he talked about the excluded evidence of the alleged extortion scheme. And he said, well, I wasn't allowed to enter this evidence, even for other purposes besides the stricken claim, which had not been identified as an affirmative defense and for the other reasons that the court disallowed it. And I studied the transcript last night because I was looking at that. And I noticed that this argument did start to come before the court. He had this motion for clarification of the court's ruling in excluding this evidence. And he said, well, I might be introducing the evidence for other purposes than the excluded claim. Such as, for example, to impeach the witness or for some other purpose. And he's mentioned that in his reply brief. When we argued before the court, and this was in the transcript on November 13th. So it is at docket 197, page 4 of the transcript on November 13th. I started in the open court to address that argument. And I started to discuss the evidentiary argument that, well, what you're really trying to do is introduce character evidence, which wouldn't be proper impeachment anyways. And I started to talk about Rule 608. The judge cut me off and said, you don't need to argue that right now. We'll have to wait and see when he tries to introduce evidence. Make your objection then, and I'll rule on the admissibility of this. Thereafter, he never attempted to introduce any of the evidence. It was never offered. He never asked a question about it. So it never came up again. So this question of exclusion of the evidence that I was, the argument that I was excluded and prejudiced by not being allowed to do this, is really incorrect because he was allowed, possibly for some other purpose. He just never attempted after that point. So that was something that was raised in the reply that I thought I would provide an additional response to. Thank you.  Thank you. Thank you, Your Honors. I want to say what a privilege I feel to be here. Thank you. I have less than five minutes. Your Honor, I'd like to clarify our position on the elevator. That liability for the loss of the elevator was decided by the trial court judge in summary judgment. My argument is that was improper, that there was enough facts and questions and circumstances where a factual issue, it should have went to the jury. The jury should have been able to hear . . . The jury did get to decide how much damage resulted from that. Right. I mean, I was sort of behind the eight ball on that. The judge already . . . I mean, Dan did a good job telling the jury. The judge already decided that they breached this and they breached that. It was a difficult trial for us. But I just wanted you to know, I'm not saying nothing to do with the elevator. I'm saying that the liability portion should have gone to the jury. And even if it was part of the Line 7 . . . So that they could say that there was no liability whatsoever. Or they could say there's no proof that you suffered any loss because there's no invoice where you spent money to buy the Orchid elevator system to add it to the Line 7. That seems like something that would be within the jury's province. Right. They would decide one or the other. And the other thing that I wanted to be able to put in front of the jury was, on the elevator issue, was . . . We stipulated to the entry of an exhibit of this transportation agreement . . . The transportation agreement had three different provisions that would have exculpated my client. Fair to timely file a claim. Force majeure. There was a cap on damages of what they . . . The contract said the damages that my client would be responsible for are what they paid for the equipment. And since they didn't have an invoice for that elevator, that became an issue for me. The problem is, is the trial court let opposing counsel cross-examine witnesses about every single provision in the contract. When I tried to cross-examine a witness on, what about this force majeure? What about the cap on damages? What about the act of God? There was an objection that I was required to plead those contractual provisions as a separate affirmative defense. And they are negating defenses, is what the case law indicates. And the reason that I didn't go further on these excluded provisions or go into these extortion is . . . And it's in the trial court record. I was warned that I would be fined a substantial sum of money immediately. I was the only trial counsel. That if I got remotely close to any of those contractual provisions . . . Or ventured on to some sort of character assassination because the extortion contempt, five-figure penalty and trial over because I was the only attorney of record. I was careful not to do that to my client or myself. On the kickbacks, it's a violation of public policy. It makes the contract void ab initio. In the summary judgment, the trial court judge said, my claims for return of that $130,000, gone. No evidence to support it. But I can also use that same conduct to defend Hawtie's claims for breach of contract. Because if it's a contract that's grounded on illegality or a violation of public policy, it's a complete defense. The contracts are void ab initio. Fine. The judge said, you can't proceed to litigate any claims on your client's behalf based on that. So I don't want to hear anything about, you want the $130,000 back? But I can also use it to defend their claim. And he permitted neither. Any other questions I'm happy to answer? Just as an aside, counsel, why is it you chose to use Roman numerals for almost half your brief before switching over to Arabic? That is, you include your summary of arguments, standard of review, statement of facts, all in Roman before you start on Arabic, which I've never seen before. Your Honor, I've done that most of my career. I thought to try and delineate the pages that counted and the pages that did not. Okay. Thank you, counsel. Thank you. Thank you.